UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

| | | |
|---|---|---|
| BANK OF AMERICA, N.A., | ) | Case No. 3:09-CV-71 |
|     Plaintiff, | ) | |
| v. | ) | |
| GREENPOINT MORTGAGE | ) | |
| FUNDING, INC. | ) | |
|     Defendant. | ) | |

## COMPLAINT

For its Complaint, the plaintiff, Bank of America, N.A. ("Bank of America") makes the following averments:

## PARTIES AND JURISDICTION

1. Bank of America is a federally chartered bank with its headquarters in Charlotte, North Carolina.

2. GreenPoint Mortgage Funding, Inc. ("GreenPoint") is a New York corporation with its principal place of business in Marin County, California.

3. GreenPoint has applied for an obtained a certificate of authority to do business in North Carolina. GreenPoint's registered agent for service of process is CT Corporation System, 327 Hillsborough Street, Raleigh, North Carolina 27603.

4. GreenPoint has continuous and systematic business contacts with North Carolina such that it is subject to general personal jurisdiction. In addition, this action arises out of GreenPoint's direct and substantial business contacts with North Carolina, namely the Master Bulk Sale and Interim Servicing Agreement, and other agreements executed with Bank of America. Therefore, GreenPoint is also subject to specific personal jurisdiction.

5. This Court has jurisdiction pursuant to 28 U.S.C. §1332 because there is a diversity of citizenship and the amount in controversy exceeds the sum or value of $75,000.00, exclusive of interest and costs.

6. Venue is proper in this District pursuant to 28 U.S.C. §1391(a) and (c).

**BANK OF AMERICA'S PURCHASE OF LOANS ORIGINATED BY GREENPOINT**

7. GreenPoint has been in the business of originating and servicing residential and commercial loans. After it originated loans, GreenPoint often placed them into a pool or portfolio to sell in bulk to purchasers of loans such as Bank of America.

8. On or about August 31, 2006, GreenPoint offered a portfolio of 2,285 loans with an aggregate unpaid principal balance of $131,239,818.00.

9. On August 31, 2006, Bank of America submitted an offer to purchase this portfolio of loans. This offer was accepted by GreenPoint.

10. As a result of GreenPoint's acceptance of Bank of America's offer, GreenPoint and Bank of America entered into a Master Bulk Sale and Interim Servicing Agreement dated September 1, 2006 (the "Master Bulk Sale Agreement").

11. Under the terms of the Master Bulk Sale Agreement, the parties agreed, among other things, that:

    (a) Bank of America would purchase the Mortgage Loans on a servicing released basis;

    (b) GreenPoint would deliver to Bank of America a computer readable file containing all of the information necessary to load the Mortgage Loans into Bank of America's servicing system;

(c) GreenPoint would deliver to Bank of America the related Mortgage Loan Documents which included the underlying note, deed of trust, assignment of mortgage, title insurance policy, appraisal, and other related documents; and

(d) Bank of America would pay to GreenPoint the Purchase Price.

12. In connection with the sale of the Mortgage Loans to Bank of America pursuant to the Master Bulk Sale Agreement, GreenPoint made certain representations and warranties to Bank of America concerning the nature and quality of the Mortgage Loans being sold.

13. Among other things, GreenPoint represented and warranted to Bank of America that:

(a) The information set forth in the Mortgage Loan Schedule annexed to the related Memorandum of Sale and the information contained on the related electronic data file delivered to the Purchaser is complete, true and accurate;

(b) No fraud, error, omission, misrepresentation, negligence, or similar occurrence with respect to the Mortgage Loan has taken place on the part of GreenPoint or the Mortgagor any appraiser, any builder or any developer, any servicer or any other party involved in the solicitation or origination of the mortgage loan;

(c) Each Mortgage Loan was underwritten in accordance with the Underwriting Guidelines, which Underwriting Guidelines satisfy the standards of prudent mortgage lenders of the same type of mortgage loans as the Mortgage Loans in the secondary market;

(d) The Mortgage File contains an Appraisal of the related Mortgaged Properties signed prior to the approval of the Mortgage Loan application by a Qualified Appraiser and the Appraisal and Appraiser both satisfy the requirements of Fannie Mae

or Freddie Mac and Title XI of the Financial Institutions Reform, Recovery, and Enforcement Act of 1989 and the regulations promulgated thereunder;

(e) There are no circumstances or conditions with respect to each Mortgage Loan, Mortgage Property, Mortgagor or Mortgagor's credit standing that can reasonably be expected to cause private institutional investors to regard the Mortgage Loans as an unacceptable investment, cause the Mortgage Loans to become delinquent, or adversely affect the value or marketability of the Mortgage Loans;

(f) All requirements of any applicable federal, state or local law including, without limitation, all applicable predatory and abusive lending, usury, truth-in-lending, real estate settlement procedures, consumer credit protection (including Uniform Consumer Credit Code laws) have been complied with; and

(g) All points, fees and charges (including finance charges), whether or not financed, assessed, collected or to be collected in connection with the origination and servicing of each Mortgage Loan, have been disclosed in writing to the borrower in accordance with applicable state and federal law and regulation.

14. GreenPoint agreed that in the event that it breached any of the foregoing representations and warranties, then, Bank of America had the sole discretion to determine whether such breach adversely affected the value of the Mortgage Loans or Bank of America's interest in the Mortgage Loans.

15. GreenPoint also agreed to give prompt notice to Bank of America when it discovered a breach of any representation and warranty that adversely affected the value of any Mortgage Loan or Bank of America's interest in any Mortgage Loan.

16. GreenPoint agreed to use its best efforts to promptly cure a breach that adversely affected the value of any Mortgage Loan or Bank of America's interest in any Mortgage Loan in

4

PPAB 1517352v3
Case 3:09-cv-00071-GCM    Document 1    Filed 02/26/2009    Page 4 of 10

all material respects within sixty days of its own discovery of the breach or within sixty days of notice by Bank of America of the breach. In the event that the breach cannot be cured, GreenPoint agreed, at Bank of America's option, to repurchase such Mortgage Loan at the Repurchase Price defined in the Master Bulk Sale Agreement.

17. In addition, GreenPoint agreed to repurchase loans in the event that the related Mortgagor was either (i) thirty or more calendar days delinquent with respect to the Mortgage Loan's first three Monthly Payments due after the related Closing Date, or (ii) a debtor in any state or federal bankruptcy or insolvency proceeding filed within sixty (60) calendar days following the related Closing Date.

18. In addition, each of the Mortgage Loans sold by GreenPoint to Bank of America were sold pursuant to one of a total of seven Trade Confirmations which are expressly incorporated into the Master Bulk Sale Agreement.

19. Among other things, the Trade Confirmations provided as follows:

(a) GreenPoint shall cause the servicing of the Mortgage Loan to be transferred to Bank of America or its designee on the fifteenth day following the Closing Date (or such other date mutually acceptable to the parties) pursuant to the Sale and Servicing Agreement;

(b) If the related mortgagor is either (i) thirty (30) days or more delinquent with respect to the Mortgage Loan first three (3) Monthly Payments due after the related Closing Date or (ii) a debtor in any state or federal bankruptcy or insolvency proceeding filed within sixty (60) days following the related Closing Date, then GreenPoint at Bank of America's option, shall repurchase such Mortgage Loan from Bank of America at the Repurchase Price within sixty (60) calendar days of receiving notice from the Bank of America;

5

PPAB 1517352v3
Case 3:09-cv-00071-GCM    Document 1    Filed 02/26/2009    Page 5 of 10

(c)     Neither the origination of the Mortgage Loan, nor the purchase thereof by Purchaser will cause the Mortgage Loan or the Purchaser to fail to comply with the OCC Guidelines Establishing Standards for Residential Mortgage Lending Practices; and

(d)     Each Mortgage Loan shall comply with certain trade stipulations, including that obligors on the loans are individuals, not enrolled in credit counseling.

20.     Pursuant to the seven Trade Confirmations, Bank of America purchased a total of 10,727 Mortgage Loans from GreenPoint with an aggregate unpaid principal balance of $639,344,033.

21.     With respect to at least 174 of the Mortgage Loans purchased by Bank of America, GreenPoint has breached one or more of the representations, warranties, and obligations described above, and further described in the Master Bulk Sale Agreement and related Trade Confirmations (the "Defective Loans").

22.     Bank of America has determined, in its sole discretion, that the above-described breaches of representations, warranties, and obligations have adversely affected the value of the Mortgage Loans affected, or the interest of Bank of America in the related Mortgage Loans affected.

23.     In addition, GreenPoint failed to use its best efforts to promptly cure such breaches in all material respects.

24.     The above-described breaches involved representations or warranties that cannot be cured within sixty days of the earlier of the discovery by or notice to GreenPoint of such breach.

25.     Pursuant to the terms of the Master Bulk Sale Agreement and the related Trade Confirmations, GreenPoint is obligated to repurchase the Defective Loans from Bank of America at the "Repurchase Price" as defined in the Master Bulk Sale Agreement.  Generally, the

6

Repurchase Price is a price equal to the sum of (a) either (i) the Unpaid Principal balance of the Mortgage Loan as of the date on which such repurchase takes place multiplied by the purchase price percentage set forth in the related Memorandum of Sale when discovery or notice of breach occurred within twelve months after the date of purchase by Bank of America, or (ii) the Unpaid Principal balance of the Mortgage Loan as of the date on which such repurchase takes place when discovery or notice of breach occurred more than twelve months after the date of purchase by Bank of America; plus (b) interest on such Unpaid Principal Balance at the Mortgage Interest Rate from the date on which interest has last been paid and distributed to the Purchaser through the last day of the month in which such repurchase takes place; plus (c) all costs and expenses incurred by the Purchaser arising out of or based upon the related breach of representation and warranty of the Company including without limitation costs and expenses incurred in the enforcement of the Company's repurchase obligation; plus (d) any unreimbursed Servicing Advances with respect to such Mortgage Loan. The Repurchase Price is currently estimated to be approximately $16 million.

26. Bank of America has timely and properly performed all of its obligations under the Master Bulk Sale Agreement and related Trade Confirmations.

27. Bank of America has timely and properly demanded repurchase of the 174 Defective Loans.

28. GreenPoint has refused to honor its repurchase obligations.

29. GreenPoint's refusal is not supported by or based on the terms of the Master Bulk Sale Agreement.

30. GreenPoint's repurchase obligation is specific, definite, and subject to specific performance.

## FIRST CLAIM FOR RELIEF
### (Breach of Contract – Actions for Specific Performance)

31. Bank of America incorporates by reference the allegations of paragraphs 1 through 30 above.

32. A valid contract exists between Bank of America and GreenPoint which requires GreenPoint to repurchase at least 174 mortgage loans sold to Bank of America pursuant to the terms of the Master Bulk Sale Agreement.

33. Bank of America has performed or is ready, willing and able to perform all of its obligations under the Master Bulk Sale Agreement and related Trade Confirmations.

34. The obligations of GreenPoint performed under the Master Bulk Sale Agreement and related Trade Confirmations are not impossible, and are sufficiently specific, definite and certain to be subject to specific performance.

35. Bank of America is entitled to an order of specific performance requiring that GreenPoint repurchase the 174 Defective Loans, or such other amount of loans that Bank of America shows at trial are required to be repurchased under the terms of the Master Bulk Sale Agreement and related Trade Confirmations.

36. Trial by jury on the claims in this action has been waived pursuant to the terms of the Master Bulk Sale Agreement.

## FIRST ALTERNATIVE CLAIM FOR RELIEF
### (Breach of Contract Damages)

37. Bank of America incorporates by reference the allegations of paragraphs 1 through 36 above.

38. In the alternative to specific performance, Bank of America is entitled to recover such damages that it proves at the trial of this action, plus interest costs and attorneys' fees.

8

39. Under the Master Bulk Sale Agreement, GreenPoint agreed to indemnify Bank of America and hold it harmless against "any claims, losses, damages, penalties, fines, forfeitures, reasonable and necessary legal fees and related costs, judgments, and any other costs and expenses resulting from any claim, demand, defense or assertion based on or grounded upon, or resulting from, a material breach or alleged material breach of the representations and warranties of GreenPoint contained in the Master Bulk Sale Agreement."

40. The Master Bulk Sale Agreement is an evidence of indebtedness. This will notify GreenPoint that the provisions relative to payment of attorneys' fee in addition to the Outstanding Balance shall be enforced, and that GreenPoint has five days from the date of service of this Complaint to pay the Outstanding Balance without attorneys' fees. If GreenPoint shall pay the outstanding balance in full before the expiration of such time, then the obligation to pay attorneys' fees shall be void, and no court shall enforce such provisions.

41. Bank of America is entitled to judgment awarding all of its damages, in an amount in excess of $75,000.00, plus interest, costs and attorneys' fees in the amount of 15% of the Outstanding Balance.

## DEMAND FOR JUDGMENT

WHEREFORE, Bank of America respectfully demands judgment as follows:

1. An Order of specific performance requiring GreenPoint to repurchase the Mortgage Loans subject to repurchase under the terms of the Master Bulk Sale Agreement;

2. In the alternative, an Order in favor of Bank of America and against GreenPoint awarding Bank of America all of its damages, caused by GreenPoint's breach of the Master Bulk Sale Agreement and related Trade Confirmations;

3. Tax the costs of this action, including attorneys' fees against GreenPoint; and

4. For such other and further relief as this Court deems just and proper.

9

This the 26th day of February, 2009.

/s/ Michael G. Adams
Michael G. Adams
North Carolina State Bar No. 16528
Ashley L. Ellis
North Carolina State Bar No. 34071
Morgan H. Rogers
North Carolina State Bar No. 37025
Parker Poe Adams & Bernstein LLP
Three Wachovia Center, Suite 3000
401 South Tryon Street
Charlotte, North Carolina 28202
Telephone: 704.372.9000
Facsimile: 704.334.4706
mikeadams@parkerpoe.com
ashleyellis@parkerpoe.com
morganrogers@parkerpoe.com
*Attorneys for Bank of America, N.A.*